LEWIS, J.,
concurring in result.
Although I concur in the result reached by the majority, I write separately to explain in more simple and direct term's the reason why Gretna is, not entitled to a license to conduct slot machine gambling. There can be no doubt that the legislative amendments and in futuro provisions have added to the confusion in this area of the law.
Aside from an amendment to the Florida Constitution that authorizes slot machine gambling in certain counties if a referendum approving slot machines is held in those counties, see art. X, § 23, Fla. Const. (2004), and certain implementing statutes in chapter 551 of the Florida Statutes, slot machine gambling is generally banned and criminalized by chapter 849 of the Florida Statutes. See § 849.08, Fla. Stat. (2013) (‘Whoever plays or engages in any game at cards, keno, roulette, faro or other game of chance, at any place, by any device whatever, for money or other thing of value, shall be guilty of a misdemeanor of the second degree, punishable as provided in s. 775.082 or s. 775.083.”); § 849.15(1), Fla. Stat. (2013) (“It is unlawful: (a) to manufacture, own, store, keep, possess, sell, rent, lease, let on shares, lend or give away, transport, or expose for sale or lease, or to offer to sell, rent, lease, let on shares, lend or give away, or permit the operation of, or for any person to permit to be placed, maintained, or used or kept in any room, space, or building owned, leased or occupied by the person or under the person’s management or control, any slot machine or device or any part thereof.”); see also §§ 849.16, .17-.21, Fla. Stat. (2013) (defining slot machines, providing .a rebuttable presumption that such a machine is “a prohibited slot machine,” providing for confiscation of slot machines by an arresting officer, providing for destruction of slot machines upon conviction, providing for no property rights in a confiscated machine, declaring slot machines and slot machine locations a nuisance, and providing a cause of action for an injunction against such a nuisance); but see § 849.235, Fla. Stat. (2013) (providing a statutory defense for antique slot machines not used for gambling).
Thus, in light of that framework, the salient issue in this case is whether any other statutory or constitutional provision authorizes counties to supersede this general ban bn slot machines by holding a referendum. Gretna has asserted that expansion of the definition of “eligible facility” in chapter 551 provides such an authorization. Specifically, “eligible facilities” now also include in pertinent part “any licensed pari-mutuel facility in any other county in which a majority of voters have approved slot machines at such facilities in a countywide referendum held pursuant to a statutory or constitutional authorization after the effective date of this section in the respective county.” § 551.102(4), Fla. Stat. (2013). However, by its own plain language, this expanded definition is not self-executing as it requires a “statutory or constitutional authorization.” While it appears the Legislature has taken a highly unusual path in providing an expanded *768 definition of eligible facility that will not currently apply to any existing factual predicate but rather will apply and enable a future factual circumstance, that appears to be exactly what the Legislature has done here. Because slot machines are generally prohibited, Gadsden County does not have and cannot assert home rule powers as a basis to support a referendum on slot machine gambling. In Florida, non-charter counties, such as Gadsden County, “shall have such power as is provided by general or special law” and “may enact, in a manner prescribed by general law, county ordinances not inconsistent with general or special law.” Art. VIII, § 1(f), Fla. Const. (emphasis added); see also § 125.01(1), Fla. Stat. (2013) (“(1) The legislative and governing body of a county shall have the power to carry on county government. To the extent not inconsistent with general or special law, this power includes, but is not restricted to, the power to: .... ” (emphasis added)). Thus, Gret-na’s reliance on Watt v. Firestone, 491 So.2d 592 (Fla. 1st DCA 1986), for the proposition that Gadsden County’s non-charter home rule powers includes that power and authorizes it to conduct a referendum approving slot machines over general law is misplaced.
For those reasons, I concur in the result.